PIESTER *v.* IDEAL CREAMERY CO.

Equity—Adequacy of Remedy at Law—Conversion of Truck—Profits from Milk Route.

> Remedy of party actually claiming damages for conversion of truck and for loss of profits arising through operation of a milk route is not by way of accounting for breach of alleged oral trust but for damages *ex contractu.*

Appeal from Wayne; Sample (George W.), J., presiding. Submitted January 10, 1939. (Docket No. 17, Calendar No. 40,277.) Decided July 6, 1939.

Bill by Theodore Charles Piester and Justine Piester against the Ideal Creamery Company, a Michigan corporation, William L. Hartsig, Henry W. Arning, and Alfred H. Hartsig, for enforcement of an alleged oral trust, an injunction, an accounting, and other relief. Decree for plaintiffs. Defendants appeal. Decree vacated.

*Munro & Donovan,* for plaintiffs.

*John W. Babcock* and *Frederick McGraw,* for defendants.

McALLISTER, J. Wendell Piester was the apparent owner of a milk route and a truck used in connection therewith. He purchased milk for delivery from the Ideal Creamery Company. At the time he went into the milk business, however, his wife, Justine, one of the plaintiffs herein, had drawn $1,150 from her savings account to buy the route. During the course of the business, she solicited customers, made certain deliveries and collections incident thereto, and made payments to the Ideal Creamery Company for milk which had been purchased for delivery.

In August, 1933, plaintiff, Justine Piester, instituted suit for divorce against Wendell Piester. The milk deliveries, however, continued to be carried on as before. On December 7, 1933, Wendell Piester owed the Ideal Creamery Company for purchases the sum of $1,062.34. Because of his failure to pay the company, it appears that at a time not disclosed by the record a certain contract was entered into between Piester and the company whereby he agreed to make certain payments and consented to stipulations providing that in case of default therein, the milk route and truck should become the property of the Ideal Creamery Company. Wendell stopped delivering milk and quit the business around the 10th of December, 1933. He did not deliver that day and when officials at the creamery company called Mrs. Piester, she told them to go ahead and deliver the milk and she would take care of it. The company did so for two days and then told Mrs. Piester they would not deliver unless they had the book and addresses of the customers. There was a meeting

thereafter at the office of the company at which Mrs. Piester, her son Theodore, and Henry W. Arning, the general manager of the company, were present. It is claimed by Mrs. Piester and her son that Mr. Arning told them that the company was taking over the route and was going to run the business because Wendell Piester had not paid the bill for milk purchased from the company and "that he would have to have the milk route book;" that in reply, Mrs. Piester told him that she had an interest in the business and a right to it; that she had worked it, had been working all the time on it, and that she was going to run the business herself. William L. Hartsig, president of the company, it is claimed, then joined the meeting, and after considerable discussion it is claimed by the plaintiffs that William Hartsig and Henry Arning agreed that Mrs. Piester would be given $12 a week by the company, which was the amount of alimony decreed by the court, and that the company would receive the route book and take over the business and make collections until the indebtedness of Wendell Piester had been paid out of the profits, at which time the route would be returned to Mrs. Piester, and her son Theodore. Theodore agreed to notify all the customers on the route not to pay anything further to Wendell Piester, and such notice was given.

There is considerable dispute with regard to the alleged agreement above mentioned. Defendants William Hartsig and Henry Arning claim that such payments were to be made to Mrs. Piester for soliciting customers, and that there was no agreement to return the route to her. In any event, weekly payments were made to Mrs. Piester for more than a year, and for the greater portion of that period were in the amount of $12 per week, later being reduced to $10 a week. Mrs. Piester testified that the reason

given to her for the reduction was that some of the previous customers had ceased to order milk. Defendants claim that payments were reduced because Mrs. Piester was not successful in soliciting new accounts. During this period, plaintiffs were advised by the bookkeeper of the company that about February 1, 1934, Wendell's indebtedness had been reduced in the amount of $270. Although plaintiffs' claim that they were continually told by Arning that an accounting would be given, they say that he finally told them the company owned the route and truck by virtue of a court decree and was under no obligation to make any further payments to Mrs. Piester. Plaintiffs then learned for the first time that the company had filed suit against Wendell and nearly a year previously, in February, 1934, had been awarded the milk business and the truck because of default of Wendell in the provision of a certain contract with the company. Thereupon, they filed their bill claiming enforcement of an oral trust, and an accounting, against the company, Henry Arning, William Hartsig and Alfred Hartsig. The circuit court, after hearing, entered a decree finding that the company had made an agreement as claimed by Mrs. Piester and holding that the company and its officers had declared a parol trust, for the benefit of Mrs. Piester and son, of the milk route and truck. The decree also provided for a reference to the circuit court commissioner, for an accounting by the said defendants, and for a transfer of the automobile truck used in the milk route to plaintiffs. The accounting ordered by the trial court was to ascertain the profits of the route from the books and accounts of defendants; and it was provided that, in event such profits could not be determined therefrom, the circuit court commissioner was to

ascertain such profits from other sources than the books; and to take testimony from persons having knowledge of the operation of milk routes; and, in such a case, to determine profits on the same basis as profits are measured on routes owned by defendants. After reciting the foregoing, the decree states the following, which is made a basis of complaint by defendants: "And said circuit court commissioner is hereby directed to ascertain damages sustained by said plaintiffs by virtue of said defendants' breach of trust, to be measured by the operation of other milk routes by the defendants in good faith."

Plaintiffs' remedy is not in equity. The route at the present time seems to be dissipated and nonexistent. It would be practically impossible for a court of equity to determine the profits to which plaintiffs would be entitled by testimony from witnesses having knowledge of the operation of milk routes conducted on the same basis as those operated *in good faith* by defendants. The truck is still available and damages for its alleged conversion by defendants can be determined. Plaintiffs have an adequate remedy at law for damages *ex contractu.*

Decree vacated, with costs to defendants.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.